And we'll hear counsel in Reilly v. Ceridian. Ruggie, I think we can conference here if that's all right with you rather than in my chambers. This will be fine. Okay. You don't want to fly him in? No, I want to fly us out.  Mr. Proudgever, we'll hear you now. Thank you. To you we can also say good afternoon and good morning to the judge. Good afternoon, Your Honors. May it please the court, I'm Alan Proudgever. I'm a partner at Greenbaum, Rose, Smith & Davis on behalf of plaintiffs and appellants in this matter. The issue before this court has been considered by at least two other circuit courts who have found that there should be Article III standing under circumstances similar to the case at Barr. In both Pashata and Krotner, the Seventh and the Ninth Circuits respectively upheld that there was standing in these kinds of identity theft cases. The facts of this case... If we applied Pashata, that would be a pyrrhic victory, right? Because Pashata then granted the motion on 12b-6. Well, the underlying state court law was different in both Pashata and Krotner. And the court in those cases, I believe, ruled that there was not sufficient resolution of the underlying state court law with regard to the underlying issues. In this case, we have a very different situation because clearly there is resolution. There's a New Jersey Supreme Court case with regard to certain issues, and there are certainly Consumer Fraud Act issues in New Jersey and identity theft protection statutes. Let's stay standing for a moment. What have you alleged in the complaint to establish that the harm is sufficiently imminent? Well, in the complaint, we've alleged what Ceridian indicated, that a hacker, because we asked for expedited discovery and we weren't given expedited discovery, but in the letter that was issued on January 29, 2009, by Ceridian, they acknowledged that a hacker accessed 27,000 individuals' information, including their bank accounts, Social Security numbers, names, addresses, and other critical identifying information. And they acknowledged that the hacker had, quote, accessed this confidential information, and they reported it, they said, to authorities and hired investigators to investigate and attempt to recreate what had happened. They do not indicate, clearly there was a violation of this confidential information, which these individuals had given to Ceridian, which is a payroll company. In many instances, the information was years old. We know of instances, for example, from New Jersey residents, where the information, the Ceridian had not been used by the employer for seven or eight years. And under the New Jersey Identity Theft Protection Act, you're obligated to destroy information, which you no longer need, and you're obligated to do it in a timely manner. That's a requirement under the statute. I just want to, sir, this is Judge Alderson interrupting you. I just want to make clear what the report to the plaintiffs here stated. He says, we believe that the information accessed included your first name, last name, social security number, and in some cases, birth date and or bank account that is used for a direct deposit of your pay. Okay. I just want to make that clear that that's all that was involved. Well, that's all that they say was involved. However, no one could possibly access anybody's bank account without getting a sign off. I'm sorry. I'm saying I'm reading from the Ceridian. The Ceridian. Letter. Report. Okay. This is what your clients received. Yes. This is what 27,000 people purportedly received because the last known address, these last known addresses of these individuals going back as much as seven or eight years. Yeah, but the point of Judge Alderson, I believe, is that you said a few moments ago and in your papers that social security numbers were also divulged. And he was very careful in his reading a moment ago not to include that. Is there somewhere else we should be looking for for that? I don't think. It's certainly not mentioned in Ceridian's papers in their letter, but we believe social security numbers were also accessed. I'm sorry. I misspoke then. First name, last name, social security number, in some cases, birth date. Did I omit social security? Most importantly, bank account information. Right. All right. Okay. Now, other than that, what do we have as to injury? And what do we have as to the high degree of immediacy and the risk when we understand that the perceived risk of future harms is something else? Well, the Jersey court… What are the actual harms when we… The Whitmore case, the Supreme Court case, I think that's the important thing that this court has to follow. An injury, in fact, must be concrete in both a qualitative and temporal sense, that the complainant must allege an injury to himself that is distinct and palpable as opposed to being merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical, that allegations of possible future injury are not sufficient to satisfy the requirement of Article 3. And a threatened injury must be certainly impending the constitute injury, in fact. Now, I would like you to help us out and tell us how the facts of this case come within our directions of the law to apply to this case. Well, there's no question but that the confidential information was hacked and was lost. There's no question about the fact that under New Jersey law, the Consumer Protection Act and the Identity Theft Protection Act, that Ceridian had a duty to destroy all information which was no longer to be used and had a duty within a 30-day window or a short window to notify the parties. There's no question about the fact that the information was removed. And as a result, there is a genuine risk of future harm related to the release of that information. In New Jersey, the courts have taken a very expansive view with regard to the law for torts and contracts as to what constitutes future harm and how future monitoring can be provided. In the case of Fear v. Cary, 133, New Jersey 610, 1993, the Supreme Court of New Jersey ruled that even in the absence of any manifest asbestos condition, a plaintiff could recover damages for the increased risk of future asbestos-related injury and for increased costs of medical monitoring when direct exposure to hazardous substance can be demonstrated. There are issues. Excuse me, what are you reading from? I'm reading from an excerpt from my notes. Oh, not from a court decision. Yes, Your Honor, that's correct. I mean, yes, not. I'm not reading from a court decision. Okay, thanks. Go ahead. And similarly, in Devlin v. Johns Manville Corporation, a New Jersey Law Division case in 1985, the court ruled that a fear and emotional distress related to potential future asbestos-related cancer injury is recoverable under New Jersey law. But there they had an actual injury, right? No, there wasn't. Well, they were exposed to asbestos. Yes, but in the case of fear, there was no actual injury. That's precisely the point. But they were exposed to asbestos. Yes, and similarly, there was an exposure to the loss of critical personal information in this case. There's no question about that. Not everyone who's exposed to asbestos develops asbestosis. Not everyone whose personal information is hacked and not recovered, and no resolution with regard to that issue is established by Ceridian. Was there any evidence in this case that somebody was hacked? Yes, Ceridian admits that its information was hacked. It says so in the jury. The question is the next step. Yes. It's not that they're hacked. It's what happened. A motion to dismiss was made before there was any discovery. We cross-moved for expedited discovery with regard to these issues. We have reason to believe that Ceridian didn't notify all 27,000 parties in the class because a lot of the parties, the information, Ceridian was no longer servicing the individuals. Well, help us. Articulate your imminent injury. Someone clearly has your or mine or anybody's Social Security, I mean bank information, personal information, and can use it at any time. They can apply for credit cards. They can do whatever they want with regard to your personal information. Ceridian supplied, applicable to this issue, Ceridian supplied a year's worth of credit monitoring services for those who took advantage of it, and they gave three months' notice. Well, we know the facts of it. Okay. Yeah. You're not from Philadelphia. Are you from Philadelphia? The question is that or the issue is that in and of itself establishes the fact that Ceridian acknowledged that there was a potential risk of harm as a result of this issue. A potential risk of harm is different than imminent injury. Well, if your personal credit information is available to a hacker and available to anybody else that the hacker determines to give it to or use it in any way, it's clear and present that there's some degree of imminence related to the release of that information. Okay. You left your credit card at a restaurant. Let me stop you right there. It is unknown whether the data was read, copied, or understood by the hacker. Isn't that so? The answer is it's unknown in this record if that's the case. However, the cases do say that in Ramirez v. STI prepaid LLC 644F sub. I'm talking about this case, the facts of this case. I'm sorry. Can you repeat your question, Your Honor? It is unknown whether the data which was hacked was read, copied, or understood by the hacker. Well, it was unencrypted, Your Honor. It was not encrypted, which the Identity Theft Protection Act in New Jersey requires if you're going to secure information. So unencrypted data could readily be read by anyone. Okay. Anyone under the circumstances, and that's a violation of New Jersey law. I have to tell you that your red light is on, has been on for a while. Is that all right with you, Ruggie? Yes. Yes. Yes. Okay. We'll get him back for how much? Five minutes. Oh, Lord. Thank you. Thank you. May it please the Court. My name is Stephen Wells. I'm with the firm of Dorsey & Whitney. I represent Ceridian. Did you come from Minneapolis? I did, Your Honor. Wow. Okay. I did, Your Honor. It's a lot nicer here than it was there. Oh, I don't know. It's not so nice here. Your Honor, it is Ceridian's position that there is no standing under Article III or cognizable damage under New Jersey state law where there's no allegation of misuse of where claims of enhanced risk of injury is dependent entirely on the hypothetical or speculative actions of an unknown person who is not before this Court. So is your view that we'd have to wait until we get a class of identity theft victims before the suit could be brought? There has to be. It is our position, Your Honor, that there has to be some evidence that the information was taken by somebody with criminal intent who understood and knew how to use it and who attempted to use it. You can't infer that? No, I don't think you can infer that, Your Honor. You can't infer when a hacker has access to Social Security information and bank information that he has nefarious intent?  Your Honor, people hack for all sorts of reasons, including what amounts to an electronic joyride. The literature is replete with this. People hack to prove they can hack, and there's no they hack governmental, they hack the CIA, they hack the Department of Defense. Now, if they hack the CIA, we would infer that it was other than a joyride, wouldn't we? No, that would not be a proper inference either, Your Honor, because many hackers have come forward to say that they hacked the CIA for the sole joy of hacking the CIA. The U.S. Attorney's Office, I'm not sure, would take that position. Well, it may be a violation of law. I'm not suggesting it's not a violation of law. Oh, okay. But the nefarious intent, if what you're suggesting is a hacker who hacks the CIA site intends to use it in espionage. No, no, no, that's not my point at all. Oh, I see. My only point is your point that it's only at that point when the intent becomes manifest. For instance, once you have an identity theft victim, the intent is manifest, right? It is. So is that your point?  But at least at the time that the information is attempted to be used somehow. For example, in both the Piciotta and the Krotner cases, there was evidence that the hacker in those cases attempted to use that information. Now, it wasn't a successful use. It was an unsuccessful use. But that was enough, I think, to convince the court that whoever had that information intended to use it in a way to the detriment of the plaintiffs in that case. That's not true in this case. There's not a shred of evidence in this case that anybody has attempted to misuse this information successfully or unsuccessfully, either to access their accounts, to change credit cards, to make charges, that kind of thing. So it's really quite different factually than the Piciotta and the Krotner cases. That's a little different. And also, counsel, in those cases were human health concerns and medical devices and toxic exposure cases, and that monetary compensation is insufficient for environmental injury. There's a difference between those cases and what we have here. Yes, Your Honor. I think the analogy to medical monitoring cases breaks down in three ways. Those cases all involve, well, let's take the toxic tort or the medical device cases. They all involve a situation where there's been a physical impact of some kind. Either a defective device has been implanted into a human being or, in the case of a toxic tort, there's been an exposure to a disease-causing mechanism. So there's been an impact, and those cases are dealing with the problem of latency. Impact has happened. Some injury, whether it's at the cellular level or other level, has occurred, but the disease may not manifest for many years. That's not what we have here. This isn't a case where they're saying that a hacker inserted a virus into somebody's bank account, and we just don't know years from now whether the bank account will get switched into somebody else's name. There's no such allegation here. So it's different. It's very different in that respect. Second, the other critical difference, it seems to me, in the medical monitoring cases is they are not dependent on the hypothetical future actions of some unknown criminal. Again, in those cases, whatever has happened, the harm is essentially complete at the time of the impact, the implantation of the device or the exposure to the disease-causing mechanism. It's just a matter of whether they will manifest. That's not true in this case. What the plaintiff claims in this case is that somebody in the future might misuse this information. It's completely conjectural. It's completely speculative. Their accounts, whether they're credit cards or banks or whatever it is that they're saying might be accessed, all those accounts are exactly the same today as they would have been had there been no hack, at least as far as we know. So I think that's a critical distinction, too. I'm sorry. Were you going to make a third point? Yeah, and the third point, Your Honor, is all of those cases, and, Judge Aldous, to your point, all of those cases deal with human health. They all deal with the special circumstances of what happens to somebody when they can anticipate or may suffer a later physical manifestation of a latent condition that's going to affect their human health, and that's very, very different from this situation. Why isn't the imminent injury, as appellants allege, the amount of money they've expended as a result? Well, first off, all the cases that have looked at this where they've found no standing have said costs incurred in fear of a future speculative injury is no more an immediate injury than the speculative injury itself. And, in fact, to say otherwise, Your Honor, it seems to me you could convert every speculative injury into immediate injury by incurring some costs and saying you're doing it in fear of the fact that the speculative injury might occur in the future. So no matter how speculative the injury in the future, well, I'm really worried about this, and I'm really concerned, and so I'm going to spend some money now to monitor or to do something else. That can't be a way to convert a speculative injury into an immediate injury. But, again, when all the courts have analyzed that kind of an argument, it is analyzed in the context, in the analogy of the medical monitoring context, because that's what the medical monitoring context is. There's a claim that there's an increased risk of future harm as a result of the exposure, and the claim is we're incurring costs today because we're concerned about the increased risks later on. And all the courts that have examined that have said you need, you've got to have those, the elements that we've talked about here. There has to be an impact. There has to be an exposure. And what we're concerned about is in this very limited situation where human health may be impacted by a later physical manifestation of a latent disease. I mean, I think that's the distinction. I might point out, too, here that Ceridian did, as a business gesture, Ceridian did offer the free credit monitoring services for a year. We don't know whether the plaintiffs took advantage of that or not. So I think even the notion that they've incurred some costs is at least it's not so. I thought there was a component that was $25,000. Was it $25,000 towards monitoring? No. The monitoring was, if I understood it correctly, the monitoring was free. And if there, I believe the offer was kind of an indemnification. If there had been damages up to $25,000, then that was what the policy was for essentially. That was the insurance policy for that. Would Ceridian have a claim? I mean, the claim of these alleged plaintiffs was secondary. Does Ceridian itself have a claim? I'm sorry, Your Honor, I'm not sure. Does Ceridian have standing? To sue? To sue. The hacker? I guess, who would they sue? Yeah. That's right. That's the problem. You would sue the security company that encrypted your system, right? Well, yeah, I don't know. I haven't thought about it. But they haven't done it. They didn't hire me to do that, Your Honor, so I don't know. Well, they haven't done it. When I read their brief, at first I thought Ceridian was the plaintiff, but it took me a while to realize. Yeah, I don't know. I mean, I don't think there's any doubt that what occurred was a criminal action. It was illegal to do what happened here. But to my knowledge, Ceridian does not know the identity of the hacker and doesn't have any information about that. Okay. Well, let me just conclude, I guess, a little bit by dealing with the damage issue because that's the alternative ground that's been provided by the court. And I should point out, too, and I'm sure this isn't lost on any of the panel here, there's not a single court in the country that has allowed a claim on these facts to proceed. They've either dismissed it one way or the other, on Article III standing or they've dismissed it on damage. New Jersey law is not expansive with respect to damage. And I agree that the Thier case is probably the case to look at when we're looking at medical monitoring damages if one is going to analogize this to a medical monitoring case. And the Thier case, and I will read from the Thier case. It's the jump site at page 628. We reverse the appellate division's judgment and conclude that medical surveillance damages are not available for plaintiffs who have not experienced direct and hence discrete exposure to a toxic substance and who have not suffered an injury or condition resulting from that exposure and whose risk of cancer cannot be limited and related specifically and tangibly to that exposure. So whether under Article III standing or whether under the New Jersey law of medical monitoring cases, these claims fail. And the other state-lawed damage claims, the Consumer Fraud Act is I guess the main claim that's being proposed by the plaintiff here. That requires proof of some ascertainable loss. Clearly there's been no ascertainable loss in this case. The other actions, negligence, breach of contract, implied contract, again, all require some form of cognizable damage, compensable damage, in the words of the district court, and I believe that's correct. And there is no injury here for which New Jersey law provides a remedy because there hasn't been any harm incurred to the plaintiffs. Unless you have any questions. No. No, thank you. Thank you, Your Honor. Are you content, Rudy? No, I'm not content. Okay. You have five minutes of rebuttal. I have five minutes, but I don't think I'll need five minutes. Oh, okay. Your Honors, I would direct your attention to a First Circuit case, which was issued October 20, 2011, Anderson v. Hannaford Brothers, which was a case involving credit and debit card data after hackers breached the electronic payment processing system of Hannaford Brothers. It was not a case briefed by either party, obviously, because it came out after we briefed, but it was issued more recently. Give it to us again. Is it an APO or a PO? It's a First Circuit court of appeals case. Oh, are you saying First Circuit? First Circuit, yes. Could you give it to us again precisely? Yes. John Anderson is the plaintiff, and there are a bevy of other named plaintiffs. Start with giving the citation. Start with giving us the citation. Okay. It is 211 U.S. App, Lexus 21239. 211 U.S. App. Lexus 21239. Lexus 21239. Yes. It was decided on October 20. It's not a published opinion. That's not a published opinion, is it? Right, apparently. Pardon? Not yet, no. But I would point out that defendant in its brief cited a myriad of cases, unpublished opinions from New Jersey and New York and other jurisdictions to support much of its opposition to what we had cited. We don't stop people from citing cases. We just don't cite them ourselves. We took the position that you have a First Amendment right to say, and if you remember this, Ruggie, we discussed this a long time ago, you have a First Amendment right to put whatever you want in the brief. But we, as a matter of our decisions, do not cite unpublished opinions, unprecedented opinions. You can take that back to Minneapolis. Go ahead. Thank you. In this case, Anderson, and not to belabor it, plaintiffs' reasonably foreseeable mitigation costs constituted cognizable harm under Maine law related to the hacking of this credit card and debit card data information. And there was no proof of actual damage in certain of those cases. But the court nonetheless found that there was Article I or Article III standing. You know, with regard to the issue. Well, excuse me, what was the claim? The claim was that there was a release of information, a breach just by a hacker, of debit and credit card information used by a supermarket chain, and that, therefore, the plaintiffs were damaged as a result of the release of that information. You have a much better argument. Too bad you weren't in the First Circuit, right? I mean, that's a much better argument of an injury, right? Well. Had it been released? In some instances, it had been released. In others, it hadn't. But there was no. So your argument, if you just look at the persons among the class or whatever that case was who had had their information released, that satisfies imminent injury? Yes. And you're equating that to the people here? Yes. And I'm equating that to the people who were exposed to asbestos but had not developed asbestosis. It's not manifest. Injury from exposure to asbestos is not manifest until it is manifested by virtue of an illness. By analogy, just because somebody has not yet used your personal information doesn't mean that they're not going to use it. If indeed exposure to, under fear and under defendant's theory, if exposure to asbestos alone is enough to create a manifest indication that you may develop asbestosis and, therefore, medical monitoring is required as a consequence, then the same analogy would be applicable here. Not everybody who's exposed to asbestos develops asbestosis. Before your red light goes off, which it hasn't, would you give us the name of the defendant in that case? Haniford. Yes. Haniford, H-A-N-N-A-F-O-R-D Brothers Company. And there are a couple of other. Versus. No, it's John Anderson and a bevy of other plaintiffs. Oh, Anderson versus Haniford. That's correct. Thank you. Haniford Brothers Co. I see that my red light is off, but I would just like to say that on the analogy and the allegation by defendants that the analogy under fear is not appropriate, I would take strenuous exception to on the basis that I've just articulated. And I would just like to point one other aspect out. Okay, while your red light is on. Okay. But good. Point out your one other. In Ramirez versus STI prepaid LLC 64F 2nd 496, District Court, New Jersey 2009, the court concluded that where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9B may be relaxed. This is precisely why we sought expedited discovery in this case. Ceridian has all the information related to what happened. They acknowledged that they turned the information over to the authorities and they acknowledged that they hired an investigator. They reported nothing about what transpired after that point. Thank you very much. Thank you. We will take this matter under advisement.